**WESTERN PLAINS SERVICE CORPORATION, A South Dakota Corporation, Plaintiff-Appellee,**

v.

**PONDEROSA DEVELOPMENT CORPORATION, A Wyoming Corporation, and Francis H. McVay, Defendants-Appellants.**

No. 83–2286.

United States Court of Appeals, Tenth Circuit.

July 30, 1985.

Nick G. Kalokathis, Lathrop & Uchner, P.C., Cheyenne, Wyo. (G. Verne Goodsell, Wilson, Olson, Goodsell & Nash, P.C., Rapid City, S.D., with him on the brief), for plaintiff-appellee.

Jack R. Gage (Thomas E. Campbell, with him on the brief), Hanes, Gage & Burke, P.C., Cheyenne, Wyo., for defendants-appellants.

Before McKAY and MOORE, Circuit Judges, and BROWN,* District Judge.

JOHN P. MOORE, Circuit Judge.

This is a diversity action brought by Western Plains Service Corporation (WPSC), appellee, to foreclose on a mortgage securing a promissory note executed by Ponderosa Development Corporation and Frank McVay (PDC collectively), appellants. PDC asserted a variety of counterclaims;[1] consequently, the case was submitted to a jury. Following a verdict finding generally for PDC, the trial court granted WPSC's motion for judgment notwithstanding the verdict. PDC filed a motion for new trial which was denied. This appeal followed. The basic issue presented is whether the jury's finding that PDC breached the loan agreement underlying the note is a complete defense against the foreclosure action. We conclude that it is not, but we find that the trial court erred in measuring interest damages awarded WPSC.

Although a range of evidence was introduced at trial, the essential facts are not in dispute. WPSC, a savings and loan service corporation, originated, packaged, serviced, and sold loans with participations from other banks or associations. Frank McVay, president of PDC, a Wyoming corporation, which developed parcels of land for residential tract housing, approached WPSC for a construction loan to finance the development of a subdivision in Mills, Wyoming. WPSC agreed to lend $500,000 to PDC for a one-year term. Under the terms of the loan, monthly disbursements were to be made to PDC by WPSC, but PDC was expected to make regular monthly payments on the debt and to complete the development project. According to the agreement, Delbert Bjordahl, chief officer for WPSC, wrote monthly checks from the loan proceeds to pay the interest and fees. Disbursals of principal were made upon WPSC's receipt of invoices or disbursal requests from the borrower. Interest accrued against the outstanding balance paid to the borrower.

Draw requests were honored until December 1979, when Bjordahl began to feel insecure about the feasibility of completing the project.[2] Although approximately $400,000 of the $500,000 had been disbursed, no further sums were advanced after the January 1980 disbursement. Subsequently, WPSC granted an extension of the one-year loan for which McVay paid $1,250. WPSC began foreclosure proceedings in federal district court when payment was not received in accordance with the extension.

The jury returned special interrogatories finding that PDC had not failed to repay

---

* The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

1. Appellants' counterclaims included recovery for fraud, Sherman antitrust violations, illegal tie-in schemes, breach of contract, illegal overcharges, and illegally filed lis pendens resulting in slander of title. At trial, most of the testimony was directed to these issues.

2. The trial court heard evidence of both faulty workmanship and failure of a third party to perform certain work to develop the tract. Conflicting evidence of bogus invoices and inflated overhead expenses was also introduced.

WPSC according to the terms of the agreement; that WPSC had breached the loan agreement; and that defendants should be awarded damages of $250,000 for losses proximately caused by the breach. WPSC moved for judgment notwithstanding the verdict on the grounds that no evidence of repayment was submitted during trial and that the issue of repayment was not contested by defendants.

In its ruling, the court found that PDC was loaned money that it never repaid; that the loan was secured by WPSC's mortgage which constituted a first lien on the property; and that WPSC was entitled to foreclose on the property to satisfy the debt. Hence, the court ordered WPSC recover $727,969.17, representing the principal sum of $500,000.00, plus interest until August 1983, reduced by offsetting damages awarded by the jury to PDC.

On appeal, PDC complains that the trial court's granting of judgment notwithstanding the verdict on the issue of WPSC's note and mortgage is error because the jury found that breach of contract was a complete defense. PDC also argues that the recovery of interest until August 1, 1983, awards WPSC the full benefit of its bargain despite its breach. Error was also assigned to the trial court's refusal to grant PDC's motion for a new trial.

Our review of the grant or denial of judgment notwithstanding the verdict mirrors that standard applied by the trial court. We must view all of the evidence and inferences therefrom in the light most favorable to the party against whom the motion is made. *Symons v. Mueller Co.,* 493 F.2d 972, 976 (10th Cir.1974). Because of the finality of the determination, this standard is a rigorous one. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2531 (1971). "[S]ince the grant of such a motion deprives the non-moving party of the determination of the facts by a jury, judgment notwithstanding the verdict should be cautiously and sparingly granted." *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 680 (10th Cir.1981). We, too, must find that the evidence presented conclusively favors one party such that reasonable men could not arrive at a contrary verdict. "The philosophy of this doctrine is that there must be a minimum of interference with the jury." *Yazzie v. Sullivent,* 561 F.2d 183, 188 (10th Cir.1977).

■ A review of the record leads unequivocally to the conclusion that no evidence of repayment was presented. The jury's verdict to the contrary is simply without foundation. WPSC advanced monies secured by a mortgage to purchase and begin the development of a tract of land that PDC did not own prior to the loan agreement. When repayment appeared unlikely, WPSC commenced a foreclosure action to liquidate its security interest. In granting WPSC judgment notwithstanding the verdict, the court concluded that PDC had not performed the terms of the agreement.

PDC now asks us to recast the action that was tried to characterize the counterclaim for breach of contract as an affirmative defense vitiating repayment of the contract. This we cannot do. That defense was not raised in the trial court, and the jury never considered whether breach was a complete defense. Nevertheless, because the jury returned damages on PDC's counterclaim and WPSC did not appeal the award of these damages, PDC would have us conclude that the jury determined WPSC's breach exonerated PDC from repayment of the loan. In asking us to reverse the court's ruling, PDC theorizes that the jury not only intended the "affirmative defense" to forgive repayment, but it also included the value of the land in its ultimate award of damages.

To support this contention, PDC relies on *Western National Bank of Lovell v. Moncur,* 624 P.2d 765 (Wyo.1981). *Moncur* involved a line of credit extended by the plaintiff bank to the defendant to finance his cattle feeding business. When the bank was sold, the new bank owners, nervous about the downturn in the cattle market, sought repayment of the $150,000 line of credit with the understanding that refinancing would be available. Relying on

these representations, defendant Moncur reduced his debt incurring substantial personal losses to keep his business in operation. Contrary to the promise to continue financing the business, the lender refused to advance additional funds and sued for recovery on the newly executed notes. Defendant counterclaimed for breach of contract and damages. The jury denied recovery on the notes and awarded $31,000 in damages to defendant for personal and property losses.

PDC cites *Moncur* for the proposition that a material breach of a contract to lend money is a complete defense to a promissory note under Wyoming law. The *Moncur* court concluded, "The verdict reflects an acceptance of appellees' defense of breach of contract to appellant's claim on the notes. It did not provide for recovery ... on the counterclaim ... concerning breach by appellant of a contract to provide a line of credit...." *Id.* at 769. Hence, the result in *Moncur* cannot be used to interpret the outcome of this case. The trial court's granting of judgment notwithstanding the verdict is not in conflict with Wyoming law and is not error.

However, in a sincere effort to arrive at a just result in this peculiar situation, the trial court's judgment awarded interest on the principal sum at the contract rate for the loan term, August 1979 to August 1980, and until trial in August 1983. Yet, just as the court attempted to align the result of this case with the evidence presented at trial, so, too, the recovery should conform to that evidence. Awarding WPSC the total amount of interest on its note ignores the fact that the jury found WPSC breached its duty to fully perform the contract terms.

 Interest is compensation paid for the use of money. *Jaglom v. C.I.R.*, 303 F.2d 847 (2d Cir.1962). In a lending transaction, the payment of interest is the consideration for which the lender bargains. WPSC decided not to advance the balance of the $500,000, reserving approximately $100,000 of the loan proceeds, a sum sufficient to pay the interest and fees for the duration of the loan term, and the reserved sum was actually paid to the lenders for that purpose.

 While the trial judge properly refused to allow a forfeiture of the interest earned prior to the breach, the award of interest thereafter results in a windfall. WPSC can only recover its bargain once. The law is well settled that a party to a contract cannot claim its benefits where he is the first to violate its terms. *Navato v. Sletten*, 560 F.2d 340 (8th Cir.1977). The court in *Moncur, supra,* reminded that the measure of damages for breach of contract is that which would place the non-breaching party in the same position as he would have been had the contract been performed. "In other words, it is that which will compensate him for the loss which full performance would have prevented or breach of it entailed." *Moncur* at 772, *citing Reynolds v. Tice*, 595 P.2d 1318, 1328 (Wyo.1979).

WPSC loaned money with the expectation of earning interest, and it risked nonpayment in the bargain. PDC borrowed money, assuming in the deal construction and economic risks. Since repayment of the principal was tied to completion of the project, the parties fully contemplated the consequences of nonperformance. In granting judgment notwithstanding the verdict, the court readjusted the rights of the parties, affirming that while appellants were entitled to damages, those damages had to be offset by their primary obligation on the note.

There is little guidance in the case law or commentary about the award of interest in this particular instance although a series of questions are instructive: (1) Would an award of interest duplicate any other elements already awarded? (2) Was there actually any loss by the plaintiff? (3) Was there any unjust gain by the defendant reasonably measurable in terms of interest? (4) Was there a contract between the parties on which the claim is based; if so, does the nature of the contract indicate an intent to either charge or forego interest in the situation before the court? *See* Dobbs,

*Handbook on the Law of Remedies* § 35, at 174 (1973).

 In response, we believe that an award of interest beyond the term of the loan would duplicate WPSC's recovery and reward it as if it had fully performed the loan agreement. Interest and fees were regularly paid to WPSC and its participating lenders. As to the second inquiry, sufficient funds had been reserved during the loan term to keep the interest payments current. In fact, reserved funds were returned to the participating banks. The record does not reveal any unjust gain by PDC. To the contrary, ample evidence shows that besides losing the project, appellants incurred substantial personal losses in their effort to forestall shutdown. Finally, if we look to the contract between the parties, the event of default permits the lender to declare the entire unpaid balance due. The unpaid balance due is the total of the funds advanced. Interest had already been paid on those funds through August 1980.

The agreement at issue is not simply a contract to lend money. The loan is only a part of, and is integrally tied to, a loan commitment premised on the borrower's performance as a condition to repayment. The jury found WPSC breached its duty to provide the funds originally committed, and "[a] party who has, by his breach, forced the injured party to seek compensation in damages should not be allowed to profit from his breach where it is established that a significant loss has occurred." Restatement (Second) of Contracts § 363 comment a (1979). A redetermination of the proper interest award must therefore be made.

Since it is clearly settled in this circuit that a trial court's denial of a motion for new trial will not be disturbed on appeal absent "a clear abuse of discretion," *United States v. Draper*, 762 F.2d 81 (10th Cir.1985), we affirm the trial court's denial of appellants' motion for a new trial.

Accordingly, we affirm the trial court's judgment granting appellee's motion for judgment notwithstanding the verdict but remand the case. On remand, the trial court is directed to redetermine the interest to be awarded solely on the basis of the contract rate for the term of the loan, reduced by the amount of interest payment which has been paid.